IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| MAURICE DOSSO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-07-2710 |
| BRITISH AIRWAYS, PLC | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff filed this case against Defendant alleging tort claims under the Warsaw Convention and a § 1981 discrimination claim. Currently pending before the Court is Defendant British Airways' Motion to Dismiss (Doc. No. 25.) The Court has reviewed the entire record, as well as the pleadings, with respect to the instant motion. The issues have been fully briefed, and the Court held a telephonic conference in this case on January 4, 2010. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will GRANT IN PART and DENY IN PART Defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 6, 2005, Maurice Dosso ("Dosso") purchased a ticket from Dulles, Virginia, ("Dulles") to Bordeaux, France, for October 19, 2005, from AirValues.com, an airline ticket wholesaler. Dosso did not immediately notice that he would need to transfer airports in London from the Heathrow Airport to the Gatwick Airport, though the ticket stated the arrival airport was London "LHR" and London departure airport was London "Gatwick." The facts are unclear as to whether Dosso noticed this inter-airport transfer before his departure from Dulles. Dosso arrived

at London Heathrow on October 20, 2005, passed through customs, and attempted to board a National Express bus to Gatwick. The National Express bus would only accept Great British Pounds ("GBP") for payment, and Dosso did not have any GBP. He also did not have time to exchange U.S. Dollars into GBP. Because Dosso could not pay, the bus driver did not allow him to board and referred him to British Airways staff for assistance.

Dosso returned to the terminal to speak with British Airways agents and stated that AirValues.com did not inform him of the inter-airport transfer in London. He asked for either a voucher or assistance in exchanging enough U.S. Dollars to pay the bus fare. Dosso and British Airways Supervisor Anita Blouddyn discussed his request until Sophie Ward ("Ward"), another agent of British Airways interrupted them. Dosso alleges Ward mocked him and referred to him as a foolish and "stupid black man." (Compl. ¶ 8.) As Dosso then turned to leave, Ward "struck him repeatedly" and commanded him to turn around and pay attention to her. (Compl. ¶ 15.) Dosso then filed a criminal complaint with the London Heathrow Terminal Police reporting her assault on him. British Airways marked Dosso as a security risk and refused to allow Dosso to continue his travel that day. Consequently, Dosso had to find overnight accommodations in London. British Airways provided transportation from the hotel to Gatwick the following day.

Plaintiff filed a Complaint with this Court against British Airways on October 9, 2007. (Doc. No. 1). On May 13, 2009, this Court issued an order dismissing former Defendant Consolidator Networks, Inc. (British Airways' sales agent) on the ground that Plaintiff had failed to plead sufficient facts to show that Consolidator Networks, Inc. had engaged in misrepresentation. (Doc. No. 24.) Defendant filed the pending Motion to Dismiss on May 22, 2009. (Doc. No. 25.) Plaintiff responded to this Motion thirty days late, without permission from the Court, and in that response, moved for leave to file his response out of time. (Doc. No. 26).

## STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* at 1949.  Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*

## ANALYSIS

Plaintiff alleges various tort claims against British Airways under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T. S. No. 876 (1934), 49 U.S.C. § 40105 (2008) [hereinafter "Warsaw Convention"]-- defamation (Count I), false light (Count II), assault (Count III), battery (Count IV), tortious interference with contractual relations (Count V), misrepresentation (Count VI), and intentional infliction of emotional distress (Count VII). He also brings a claim under 42 U.S.C. § 1981-- discrimination in the making or enforcement of contracts based on race (Count VIII). Defendant argues that this Court should dismiss Plaintiff's claims because the Warsaw Convention preempts Plaintiff's tort claims and does not provide a remedy for them. Plaintiff responds that the British Airways' agents' actions meet the definition of  "accidents" under  Article 17 of the Convention, and thus should be remedied under the Convention. Plaintiff additionally contends that the inter-airport transfer was part of his embarkment, but was interrupted, and therefore relief should be available under both the Convention and local law for injuries he suffered during this period. (Pl.'s Opp'n 6.)

1. **Motion to File Response Out of Time**

Plaintiff filed his response to Defendant's Motion to Dismiss thirty days after the deadline. Defendant argues that the Court should not accept Plaintiff's response under Federal Rule of Civil Procedure 6(b)(1) because the lateness was not a result of "excusable neglect." Defendant

contends that none of Plaintiff's proffered excuses qualify as "excusable." According to Defendant, Plaintiff's busy workload is typical of all lawyers, the medical condition and hospitalization of Plaintiff's advisor is insufficient because the advisor was not a counsel of record, and the alleged novelty of the case does not support the Court's allowing Plaintiff's late filing. The Court appreciates Defendant's admonishments, but deems the Plaintiff's neglect excusable given the relatively minimal lateness and the hospitalization of apparent counsel in the case. The Court therefore grants Plaintiff's Motion to File Response Out of Time.

**2.  Preemption of Counts I - VII under The Warsaw Convention**

Plaintiff contends that because the British Airways agent interrupted his onward travel, he can seek relief both under the Convention and under state law.[1] Defendant contends that solely the Convention governs Plaintiff's claims, and preempts Plaintiff's tort claims because the incident does not qualify as an "accident" and did not cause him "personal injury." (Pl.'s Opp'n 2-3.)

The Convention provides a uniform liability system for passengers experiencing physical injury on international flights to recover for damages, and provides the exclusive remedy whenever it applies. Article 17 of the Convention provides, "[t]he carrier shall be liable for damage sustained in the event of . . . bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Warsaw Convention, Oct. 12, 1929, art. 17, 49 Stat. 3018. The Convention thus applies when there is "(1) an 'accident,' that (2) 'took place on board the aircraft or in the course of any of the operations of embarking or disembarking,' and that (3) 'caused' the death, wounding or other bodily injury of a passenger." *Sakaria v. Trans World Airlines*, 8 F.3d 164, 170 (4th Cir. 1993). Courts also apply the tripartite test to an airline's

---

[1] It is unclear from the Complaint to which state law, if any, Plaintiff refers.

change in a plaintiff's flight schedule to determine if the injury falls in the Convention's scope. *See King v. Am. Airlines, Inc.*, 284 F.3d 352, 360-61 (2d Cir. 2002) ("At the time they were bumped from their flight, the Kings had . . boarded the vehicle that was to transport them from the terminal to the aircraft[;] . . . they were "actively engaged in preparations to board the plane."). "This remedial system is designed to protect air carriers against catastrophic, crippling liability by establishing monetary caps on awards and restricting the types of claims that may be brought against carriers, while accommodating the interests of injured passengers by creating a presumption of liability against the carrier when a claim satisfies the substantive requirements of the Convention." *King v. Am. Airlines*, 284 F.3d 352, 357 (2d Cir. 2002) (citing *El Al Isr. Airlines v. Tsui Yuan Tseng*, 525 U.S. 155, 169-70 (U.S. 1999)).

Whether a passenger's injury occurred "on board the aircraft or in the course of any operations of embarking or disembarking is a question of law to be decided by the court based on the facts of each case." *Acevedo-Reinoso v. Iberia Lineas Aereas De Espana S.A.*, 449 F.3d 7, 12 (1st Cir. 2006) (remanding a motion to dismiss to allow for consideration of whether someone was embarking or disembarking). In making this determination courts use a test similar to that first elaborated in *Day v. Trans. World Airlines, Inc.*, 528 F.2d 31, 33-34 (1st Cir. 1975):

- Where the plaintiff was when the accident occurred ("location");
- What the plaintiff was doing ("activity"); and
- At whose direction the plaintiff was acting ("control").

Most cases have narrowly construed the phrase, denying most accidents the coverage of the Convention. The courts have proved less likely to find coverage when the passenger has already entered a public (non-restricted) area of the terminal and becomes free to set his or her "own pace, direction, and course of travel."

*Turturro v. Cont'l Airlines*, 128 F. Supp. 2d 170, 181-182 (S.D.N.Y. 2001) (citing *Day*, 528 F.2d 31.). Some courts have additionally referred to the imminence of boarding in making this decision. *See Marotte v. Am. Airlines, Inc.*, 296 F.3d 1255, 1260 (11th Cir. 2002).

Courts use the tripartite *Day* test to assess the Plaintiff's activity, location, and control at the time of the injury to determine if a plaintiff was embarking or disembarking during the course of a transfer, and do not generally consider inter-terminal airport transfers to constitute embarking or disembarking. *See Schmidkunz v. Scandinavian Airlines Sys.*, 628 F.2d 1205, 1207-1208 (9th Cir. 1980) (deeming injury outside the scope of the Convention because "[a]ppellant had left the airplane on which she had arrived in Copenhagen, had walked not closer than approximately 500 yards from the boarding gate to the SAS airliner that she was to take," was in common area of terminal, did not have boarding pass, was not imminently boarding plane, and not under control of SAS personnel.); *Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8 (2d Cir. 1990) (holding that where plaintiff had recently checked in, had two hours to wander around the terminal and was nowhere near the gate, he was not in the process of boarding).

In *Maugnie v. Compagnie National Air France*, the Court applied the tripartite *Day* test to determine the limits of "disembarking." 549 F.2d 1256, 1259-61 (9th Cir. 1977). The Court held that because Maugnie was in a common area of the airport that was not owned or leased by the carrier and was not under the control of the carrier, she was not in the process of embarking or disembarking. *Id.* at 1262. Cases that followed *Maugnie* held "disembarking" extended until when a passenger passed through customs. *See Alleyn v. Port. Auth.*, 58 F. Supp. 2d. 15, 21 (E.D. N.Y. 1999) (holding that plaintiffs "injured after clearing immigration, on their way to or already in baggage claim areas were found to have finished disembarking before their injuries occurred").

The Court finds that the alleged injuries in this case are not governed by the Warsaw Convention because they did not occur in the course of any of the operations of embarking or disembarking. Occurrence of an accident *during* the operations of embarking or disembarking is

7

a preliminary requirement for the application of the Warsaw Convention. Plaintiff's own Complaint essentially concedes that the injury on which its claims are based did not occur during embarkation. Plaintiff contends that "the inter-airport transfer was initially a part of Mr. Dosso's onward passage to his destination, but with interruption of his travel, he was not 'embarking and disembarking.'" (Pl.'s Opp'n 6.) The Court is unconvinced by Plaintiff's argument he was in the course of "embarking" on his new flight until he questioned the Agent because he was far outside the control of airline employees. Though Plaintiff has not argued that the Warsaw Convention is inapplicable, the Court cannot allow the claim to proceed under the Warsaw Convention where it clearly does not apply.[2]

The Court finds that Plaintiff was not in the process of embarkment or disembarkment since he had not yet arrived at his departure airport, was free to go where he wanted, and was not under the control of the carrier. *See Maugnie*, 549 F.2d at 1261. Plaintiff has fallen far short of the requirements for showing disembarkment, as at the time of his injury, he had already cleared customs, gone to the inter-airport bus, and returned back to the terminal for assistance. Plaintiff also fails to show he was embarking. Given that courts have found that passengers are not embarking when they are in a common area of the terminal from which their plane will depart, the fact that Plaintiff was injured outside of the airport from which his flight departed weighs heavily against his claim that he was in the process of embarking. Moreover, Plaintiff was not engaged in a boarding activity when he was injured, but rather was engaged in transport to the departure airport. Courts have generally not interpreted activities so distant to actual embarkment of the airplane to constitute embarkment. Nor has Plaintiff pled boarding was imminent. Finally,

---

[2]Defendant notes the atypicality of Plaintiff contending the Convention is applicable in this scenario. (Def.'s Reply 2.)

Plaintiff was fully in control of his movement at that point. Though the agent was talking to him, he was free to go, unlike plaintiffs who were subject to strip search or already in an airplane.

The Court having found that Plaintiff's claims are outside the scope of the Convention, the Convention poses no barrier to Counts I through VII standing as state law claims, had they been brought under any foreign, state, or local law. Here, however, the Court has carefully reviewed Plaintiff's Complaint, particularly the jurisdictional statement, and observes that the Plaintiff has brought these claims under what he asserted was the "exclusive jurisdiction" of this Court under the Warsaw Convention. (Compl. ¶ 3.) Accordingly, the Court will not treat these claims as having been asserted on any other basis. Because Plaintiff has only brought these claims under the Warsaw Convention in his Complaint, the Court will not treat them as state law claims and will dismiss them.

### 3. Count VI - Misrepresentation

The Court dismisses Count VI on the ground that the Convention does not apply. But, the Court will also address Defendant's alternative ground for dismissal of Count VI. Plaintiff alleges that Defendant defrauded him by providing him with a ticket that did not indicate he would have to transfer airports in London. Defendant argues that in the alternative to his preemption argument, the Court should dismiss Plaintiff's misrepresentation claim because 1) this Court has already dismissed this claim against a former Defendant for reasons that apply to this Defendant as well, and 2) this claim is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1). In a previous Order, this Court held that the itinerary was not misleading because the itinerary clearly states that Plaintiff would arrive at London - Heathrow and depart from London - Gatwick. (Doc. No. 24). Because the Court has previously ruled that the itinerary was not misleading, the Court finds that Plaintiff cannot establish that British Airways misled him

through this itinerary. The Court therefore dismisses Count VI without addressing the relevance of the Airline Deregulation Act's prohibition on state airline regulation.

### 4. Count VIII - § 1981 Claim

As the Court finds that the Warsaw Convention does not apply because Plaintiff was not disembarking or embarking at the time of the injury, the Court finds that the Warsaw Convention does not preempt Plaintiff's § 1981 claim. Plaintiff alleges British Airways intentionally discriminated against him by making defamatory statements against him, deeming him a security risk and entering that demarcation in his passenger record, and refusing to "transport him to his onward destination." (Compl. ¶ 49.) Defendant assumes the Convention applies and argues the Court should dismiss Plaintiff's § 1981 claim because the Convention preempts all damages requests under federal anti-discrimination statutes. (Def.'s Mem. Sup. Summ. J. 5.) Defendant explains that if Plaintiff sought equitable relief, there would be some case precedent in his favor, but that no legal authority supports Plaintiff's request for damages for this preempted claim. Plaintiff argues that there is minimal guidance on whether the Warsaw Convention preempts the constitutional tort claim Plaintiff makes in this case because the British Airways agents "[s]elect[ed] Mr. Dosso for assaultive contact, premised wholly or in part on his race." (Pl.'s Opp'n 4.) Plaintiff contends that because racial animus was the motivation for the assault in this case, it is not clear that the Warsaw Convention, which would not provide a remedy, can preempt local law. In *King v. American Airlines*, the Second Circuit held that a § 1981 claim could be preempted by the Convention. *King v. Am. Airlines, Inc.*, 284 F.3d 352, 358 (2d Cir. 2002). The Second Circuit held that the passengers who were "bumped" involuntarily to another flight after boarding a vehicle that would transfer them to the aircraft were embarking because "[a]t the time they were bumped from their flight, the Kings had already checked in for their flight, received

their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft. In other words . . . they 'actively engaged in preparations to board the plane,'" and thus their claims were preempted by the Convention, Article 17. *Id.* at 360. None of these arguments address the merits of Plaintiff's § 1981 claim apart from its preemption by the Warsaw Convention, however. Accordingly, Plaintiff's § 1981 claim stands, and will not be dismissed.

The Court has reviewed the Complaint and believes that it sufficiently states a plausible claim under § 1981. Plaintiff has alleged that British Airways' decision to exclude him from the flight was motivated by race, and has made the additional allegation that British Airways, through its agents' racially-motivated conduct, deprived Plaintiff of his right to enforce his contract. The Court will issue a scheduling order and permit discovery with respect to the remaining § 1981 claim.

**5. Punitive Damages**

Defendant argues the Court should dismiss plaintiff's claims for punitive damages since the Warsaw Convention does not allow for recovery of punitive damages, and all of his claims are preempted by the Convention. As the Court holds the Warsaw Convention does not apply, the Court will not dismiss Plaintiff's claim for punitive damages in the one remaining claim—the § 1981 claim.

## CONCLUSION

For the foregoing reasons, British Airways' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Court will issue a scheduling order. A separate Order will follow.

    January 5, 2010                                                                       /s/
          Date                                                                    Alexander Williams, Jr.
                                                                              United States District Judge